UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

**In re:**                                                              Chapter 7

                                                                        Case No. 18-31081

Abby Rae Holmes,
                                                                        Hon. Joel D. Applebaum

      Debtor(s).      /

Abby Rae Holmes,

      Plaintiff(s),                                      Adversary No.

v.

Sallie Mae Education Trust; Navient PC Trust;
LendKey Technologies; Dort Federal Credit
Union and Reliamax Surety Company

      Defendant(s),      /

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOANS

    **NOW COMES** Plaintiff, Abby Rae Holmes, by and through her attorneys, Moran Law, and in support of her Complaint to Determine Dischargeability of Student Loans states as follows:

1. That the Plaintiff-Debtor (hereinafter referred to as "Plaintiff"), Abby Rae Holmes filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on April 27, 2018. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. This adversary proceeding relates to the above referenced case under Chapter 13 of the Bankruptcy Code now pending before this Court.

2. That Plaintiff obtained student loans from Sallie Mae Education Trust (hereinafter referred to as "Sallie Mae") on or about August 10, 2007 in the amount of $14,000.00; May 19, 2008 in the amount of $12,000.00 and September 2, 2009 in the amount of $15,000.00 respectively.

3. That upon information and belief, Navient PC Trust (hereinafter referred to as "Navient") is the servicer or current owner of the Sallie Mae loans.

4. That as of September 3, 2009 the total amount owed to Sallie Mae/Navient was approximately $41,000.00.

5. That Navient was duly listed as an unsecured creditor in the Plaintiff's related Chapter 13 proceeding.

6. That according to proofs of claim 2-1, 3-1 and 4-1 filed by Navient on June 28, 2018, at the time of filing, Plaintiff owed Sallie Mae/Navient for three educational loans in the total amount of $77,565.45.

7. That Plaintiff obtained student loans from Dort Federal Credit Union (hereinafter referred to as "Dort FCU") on or about September 14, 2010 in the amount of $6,570.51; May 23, 2011 in the amount of $5,435.90; September 12, 2011 in the amount of $6,500.00 and August 29, 2012 in the amount of $3,000.00 respectively.

8. That upon information and belief, Reliamax Surety Company (hereinafter referred to as "Reliamax") is the servicer or current owner of the Dort FCU loans.

9. That upon information and belief, LendKey Technologies (hereinafter referred to as "LendKey") is the servicer of the Dort FCU/Reliamax loans.

10. That as of August 30, 2012 the total amount owed to Dort FCU/Reliamax was approximately $21,506.41.

11. That Lendkey/Dort FCU was duly listed as an unsecured creditor in the Plaintiff's related Chapter 13 proceeding.

12. That according to proofs of claim 6-1, 7-1, 8-1 and 9-1 filed by Reliamax on July 9, 2018, at the time of filing, Plaintiff owed Dort FCU/Reliamax for four educational loans in the total amount of $55,765.74.

13. That Plaintiff borrowed the funds in question in order to attend Ferris State University (hereinafter referred to as "FSU") between 2007 and 2013 and attain a degree in Resort Management.

14. That pursuant to 11 U.S.C. § 523 (a)(8), loans made or given for educational benefits are non-dischargeable except when such debt would impose an undue hardship on the debtor or the debtor's dependents.

15. That Such debts would impose an undue hardship on Plaintiff to wit:

   a. Plaintiff graduated from FSU with a degree in Resort Management in or about December 2013 and in or about January 2014, began a six month internship with Walt Disney Resorts in Orlando, Florida where she earned approximately $8.99 per hour working approximately 30 hours per week and grossing approximately $1,168.70 per month.

   b. In or about November 2014, Plaintiff began seasonal full-time employment at Copper Mountain in Frisco, Colorado where she earned approximately $10.00 per hour working 40 hours per week and grossing approximately $1,733.33 per month. By the time Plaintiff's employment with Copper Mountain ended in May 2017 she was grossing approximately $1,838.89 per month.

   c. From June 2017 through January 2018 Plaintiff once again interned at Walt Disney Resorts in Orlando where she earned approximately $10.65 per hour, working approximately 40 hours per week and grossing approximately $1,846.00 per month. Debtor chose to intern at the Walt Disney Resort for a second time in the hopes of gaining full-time employment but no such offer was ever made to Plaintiff.

   d. Unsuccessful in her attempt to gain full time employment at Disney, Plaintiff went back to Copper Mountain in January 2018 where she once again grossed approximately $1,838.89 per month.

   e. In March 2018, upon learning that all management positions at Copper Mountain had been filled and realizing that there was no potential for advancement, Plaintiff moved back to Michigan to live with her parents.

   f. In approximately September 2018, Plaintiff began full-time employment at the Crown Plaza Hotel in Auburn Hills, Michigan where she earned approximately $11.00 per hour, working approximately 35 hours per week and grossing approximately $1,668.33 per month.

   g. Plaintiff left the Crown Plaza Hotel in approximately September 2019 for an opportunity to work for Stratabare where she would have earned $180.00 per day. However, due to lack of available projects and the Covid-19 Pandemic, Plaintiff's employment with Stratabare ceased in May 2020. Plaintiff estimates that her total gross earnings while at Stratabare were $2,000.00 over the nine month period.

   h. Simultaneous to her employment at the Crown Plaza Hotel and Stratabare, in October 2018 Debtor began working at the Disney Store in Auburn Hills, Michigan where she started at $10.00 per hour and eventually earned $10.50 per

hour working 15-25 hours per week. Debtor's employment with Disney was terminated effective September 18, 2021 due to the fact that the Auburn Hills Store had closed.

i. In March 2021, Plaintiff began working at Torrid where she earns $11.00 per hour, working approximately 20 – 25 hours per week and grossing approximately $996.56 per month.

j. Effective September 18, 2021 Plaintiff's employment at Torrid is her only source of income other than the support she receives from her Father. Plaintiff lives with her parents because she is unable to afford basic living expenses in addition to rent and utilities.

k. The current median income for a household of one in this jurisdiction is $53,815.00 per year. Based on her employment income, Plaintiff is $40,000.00 below the median income for a household of her size, at best.

l. Debtor suffers from Hypothyroidism coupled with Hashimoto Disease and a herniated disc in her back which limit her ability to work significant hours.

m. Plaintiff made payments on the subject loans until her financial hardship prevented her from doing so.

n. Fearing negative credit reporting, legal action and eventual garnishment, Plaintiff filed for Chapter 13 Bankruptcy protection on April 27, 2018.

o. Plaintiff also owes approximately $37,260.00 in federal student loans which are in forbearance due to Plaintiff's Chapter 13 Bankruptcy.

p. Assuming *arguendo* Plaintiff was allowed to repay Sallie Mae/Navient and Dort/Reliamax $250.00 per month at 0% interest, it would take her approximately 529 months or 44 years to pay the debts in full.

q. As such, Plaintiff's student loan payments make it virtually impossible for Plaintiff to maintain a minimal standard of living if required to pay off the private student loans owed to Defendants.

r. Moreover, due to Plaintiff's financial state, and despite her best efforts to improve her financial circumstances and maximize her income, her circumstances will not

likely improve in the foreseeable future so as to make repayment of these loans financially feasible.

s. Given Plaintiff's overall income, excessive monthly student loan obligations, necessary and reasonable household expenses, and the fact that Plaintiff cannot decrease her expenses, Plaintiff cannot afford the subject student loans.

t. Plaintiff has acted in good faith while attempting to repay the subject loans but is unable to continue to do so and unlikely to be able to do so in the foreseeable future for the reasons cited in sub-paragraphs "a" through "t", supra. See *In re Brunner*, 831 F.2d 395 (2nd Cir. 1987).

16. That Plaintiff now seeks full dischargeability of said obligations as unsecured, non-priority debt, pursuant to 11 U.S.C. § 523(a)(8). If the Plaintiff were to lack a showing of undue hardship, in accordance with the *Brunner* test, as it pertains to the Sallie Mae/Navient and Dort FCU/Reliamax debts, the Plaintiff requests that the Court consider the involuntary circumstances of her financial hardship and apply its discretion for partial discharge in accordance with 11 U.S.C. § 105(a). See *In re Hornsby*, 144 F.3d 433 (6th Cir. 1998)

**WHEREFORE**, Plaintiff respectfully prays that the student loans owed to Defendants, be determined as an undue or unconscionable hardship on Plaintiff and that said student loan obligations be discharged as a part of Plaintiff's related Chapter 13 proceeding; and for such other and further relief as this Court deems equitable and just.

September 30, 2021                                   Respectfully Submitted,

/s/ Ryan B. Moran
Ryan B. Moran (P70753)
Joshua D. Mahoney (P76563)
Attorney for Plaintiff
Moran Law Office
25600 Woodward Ave., Suite 201
Royal Oak, MI 48067
Phone: (248) 246-6536
Email: *ch13@moranlaw.com*